Not for Publication

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE INDIAN EXPRESS PRIVATE LIMITED, f/k/a THE INDIAN EXPRESS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>SUNIL K. HALI, EASTERN MEDIA HOLDINGS, INC., NEW MEDIA INDIAN EXPRESS, LLC, and MAYA CONSULTING GROUP, INC.,<br><br>Defendants. | Civil Action No. 20-2741 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff The Indian Express Private Limited f/k/a The Indian Express Limited ("TIEPL") moves to dismiss two counterclaims asserted by Defendants Sunil K. Hali ("Hali") and Eastern Media Holdings, Inc. ("EMH") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 21). Having reviewed the parties' submissions, the Court decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, TIEPL's motion is **GRANTED in part** and **DENIED in part**.

**I.      BACKGROUND**

TIEPL is organized under the laws of India, where it also has its principal place of business. (D.E. No. 1 ("Compl.") ¶ 6). It is the publisher of *The Indian Express*, an English-language daily newspaper that has been published in India since 1932. (*Id.* ¶¶ 1–2). Hali is a New Jersey resident.

1

(*Id.* ¶ 7). He is the chairman of EMH, which has its principal place of business in New York.[1] (*Id.* at ¶¶ 8 & 35).

On May 4, 2000, Indian Express Newspaper (Bombay) Limited—which is one of TIEPL's predecessors—entered into a Franchise Agreement with EMH, allowing EMH to print, publish, and distribute *The Indian Express* as a weekly publication in North America. (*Id.* ¶¶ 4 & 37; D.E. No. 22, Ex. A, Novation Agreement, Annexure A ("Franchise Agreement")). Under the Franchise Agreement, which ran for an initial 10-year term and was subject to renewal, TIEPL's predecessor retained rights to its intellectual property and control of the editorial content of a North American version of *The Indian Express*. (Compl. ¶ 40; Franchise Agreement ¶¶ 1 & 4–5).

At some point, TIEPL's predecessor underwent a structural reorganization, resulting in the company The Indian Express Limited ("TIEL"). (Compl. ¶ 42). In February 2010, just a few months shy of the expiration of the initial 10-year term of the Franchise Agreement, TIEL and EMH entered into a Novation Agreement. (D.E. No. 22, Ex. A, Novation Agreement). Through the Novation Agreement, TIEL took the place as party to the Franchise Agreement. (*Id.* ¶ 2.1).

TIEPL claims that on May 3, 2010, any right that EMH had to publish a North American version of *The Indian Express* expired. (Compl. ¶ 43). On June 2, 2010, TIEL directed EMH to cease and desist from using TIEL's intellectual property, including the INDIAN EXPRESS trademark. (*Id.* ¶ 44). On May 28, 2015, TIEL was converted into TIEPL. (*Id.* ¶ 45). TIEPL claims that Hali and EMH, as well as New Media Indian Express, LLC ("NMIE") and Maya Consulting Group, Inc. ("Maya"), continue to publish, sell, offer for sale, distribute, or advertise unauthorized North American versions of *The Indian Express* and has used the INDIAN EXPRESS trademark to further those activities in the United States and abroad. (*Id.* ¶¶ 47–63).

---

[1] Whether EMH is a viable business entity may be in dispute but need not be resolved here for purposes of this motion. (D.E. No. 23, Moving Brief of TIEPL ("Mov. Br.") at 13 n.7).

Accordingly, on March 12, 2020, TIEPL filed suit against Hali, EMH, NMIE, and Maya, asserting federal statutory claims of trademark infringement, 15 U.S.C. § 1114; trademark infringement, false designation of origin, and unfair competition, § 1125(a); and false advertising, § 1125(a). TIEPL also asserts state statutory and common law claims of false advertising and false designation of origin; unfair competition; trademark infringement; and tortious interference with prospective economic advantage.

After service of the Complaint, Defendants failed to timely respond, prompting TIEPL to move for entry of default on July 2, 2020. (D.E. No. 13). On July 8, the Clerk of Court entered default. But then on August 11, 2020, the Court set aside the entry of default upon an agreement and stipulation of the parties. (D.E. Nos. 16 & 17).

On August 18, Defendants filed an answer with affirmative defenses—one of which is that they may properly use TIEPL's trademark pursuant to the Franchise Agreement—and counterclaims. (D.E. No. 18, Answer, Fourth Affirmative Defense). At issue in the pending motion are the counterclaims. Hali and EMH, specifically, assert a counterclaim for breach of contract. (*Id.*, Counterclaim ¶¶ 1–15). Hali and EMH contend that the license granted to EMH did not terminate at the end of the initial 10-year term because neither TIEPL nor its predecessor properly terminated the Franchise Agreement. (*Id.* ¶ 5). Hali and EMH allege that in breach of the Franchise Agreement, TIEPL "abruptly ceased sending content to [EMH], putting in peril an operation in which defendants had invested millions of dollars." (*Id.* ¶ 11). According to Hali and EMH, TIEPL's wrongful conduct caused EMH "substantial damage" and caused Hali "particularized damage, as he depended upon the publication of *The Indian Express* in North America for his livelihood." (*Id.* ¶ 12). Finally, Hali raises a separate counterclaim for intentional

interference with contract and prospective economic advantage. (*Id.* ¶¶ 16–20).[2] Specifically, Hali contends that TIEPL caused its attorneys to send an email to the editorial board of *The Indian Eye*—a different publication that Hali had created—advising them of this lawsuit and asserting that Hali had been avoiding the lawsuit and its "serious legal claims." (*Id.* ¶¶ 17–18). The email attached a copy of TIEPL's Complaint and states:

> Dear Editorial Board of The Indian Eye,
>
> The Indian Eye professes to be a source of global news about India and the Indian Diaspora in North America. I write to provide you with newsworthy information that should be of interest to your readers.
>
> Enclosed please find a copy of a complaint filed against your publisher Sunil Hali in federal court in New Jersey. As you can see from the complaint, Mr. Hali and several companies that he controls are accused of infringing the INDIAN EXPRESS® trademark, unfair competition and false advertising through publishing an unauthorized North American version of The Indian Express and falsely representing that he is an authorized representative of The Indian Express.
>
> Unfortunately, Mr. Hali has been avoiding this lawsuit and has failed to respond to these serious legal claims. As a result, The Indian Express soon will be moving for a default judgment against Mr. Hali and his companies.
>
> Your readers should be made aware of this information about the publisher of The Indian Eye.

(D.E. No. 21-3, Ex. B).

TIEPL moves to dismiss both counterclaims under Rule 12(b)(6). For the claim of breach of contract, TIEPL argues that Hali is not a party to either the Franchise Agreement or the Novation Agreement and thus lacks standing, and that the Agreements contain forum selection clauses that require EMH to bring its claim in the courts of India, thus requiring dismissal on *forum non*

---

[2] Although both Hali and EMH demand judgment for this claim, the allegations and damages asserted therein only pertain to Hali. Accordingly, the Court construes this claim as asserted only by Hali.

*conveniens* grounds. For the claim of intentional interference, TIEPL argues that Hali fails to sufficiently and plausibly state the elements of the cause of action.

## II. LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Courts must "determine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). However, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations." *McCargo v. Hall*, No. 11-0533, 2011 WL 6725613, at *1 (D.N.J. Dec. 20, 2011) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997)). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Contradictory factual assertions on the part of defendants must be ignored. *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 440 n.1 (D.N.J. 2010).

### III.   DISCUSSION

#### A.   Breach of Contract

The Court first addresses Hali's standing to sue and then whether the doctrine of *forum non conveniens* requires dismissal of EMH's claim.

##### (i)   Standing

TIEPL argues that Hali lacks standing to sue for breach of contract because he is neither a party nor intended beneficiary to the Franchise Agreement. (Mov. Br. at 12–13). Hali does not dispute that he is neither a party nor intended beneficiary of the Franchise Agreement. (D.E. No. 28, Opposition Brief of Hali and EMH ("Opp. Br.") at 4). Instead, he claims standing to sue because he is the sole shareholder of EMH and has suffered direct and particularized damages—those being, the loss of personal livelihood—that are separate and distinct from those suffered by EMH. (*Id.* at 4–6). And to the extent the law does not recognize his standing to sue, he asks the Court to "discard" that law and adopt a different rule from other jurisdictions. (*Id.* at 6–7).

For starters, nowhere in either counterclaim do Hali or EMH allege that Hali is the sole shareholder of EMH. Even still, the settled rule—which the Court declines to discard—is that absent a direct individual injury "a shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Cent. Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F. Supp. 289, 301 (D.N.J. 1997) (quoting *Jones v. Niagara Frontier Transportation Auth.*, 836 F.2d 731, 736 (2d Cir. 1987)); *accord Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012). And the Court is not persuaded that Hali's purported damage to his livelihood is a direct individual injury. Hali's asserted damages are the same as those claimed on behalf of EMH and stem from the alleged wrong to EMH—*i.e.*,

6

breach of the terms of the Franchise Agreement. Accordingly, Hali's injuries are derivative rather than personal. Thus, Hali lacks standing to sue for breach of contract.

        **(ii)**      **Forum Selection Clause**

TIEPL moves to dismiss the claim for breach of contract under the doctrine of *forum non conveniens*, arguing that Hali and EMH are precluded from suing for breach of contract in this Court because the Franchise and Novation Agreements contain mandatory forum selection clauses. (Mov. Br. at 10–11 & 13–18).[3]

Paragraph 11 of the Franchise Agreement states that "[t]his agreement shall be subject to the jurisdiction of the competent courts at Mumbai, India." Paragraph 3.1 of the Novation Agreement provides that "[t]his Novation Agreement is governed by and is to be construed in the same manner and subject to the same jurisdiction as the Novated Agreement, ie to the laws of India; and the courts of Mumbai shall have exclusive jurisdiction with respect to any dispute or differences arising from or in connection therewith."

Hali and EMH do not dispute that their claim for breach of contract constitutes a "dispute or difference[] arising from or in connection" with the Franchise and Novation Agreements. (Opp. Br. at 7–14). Instead, they argue that the above forum selection clauses are permissive, not mandatory. (*Id.* at 7–9). They argue that ¶ 11 of the Franchise Agreement does not provide that jurisdiction in India is exclusive but merely gives jurisdiction to Indian courts if litigation occurs in India. (*Id.* at 7–8). As to the Novation Agreement, Hali and EMH contend that ¶ 3.1 is at best

---

[3] The Third Circuit has held that "a Rule 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." *Salovaara v. Jackson Nat. Life Ins. Co.,* 246 F.3d 289, 299 (3d Cir. 2001). The Rule 12(b)(6) standard has also been applied to enforce a forum selection clause specifying a non-federal forum. *See Wall Street Aubrey Golf, LLC v. Aubrey,* 189 F. App'x 82 (3d Cir. 2006) (affirming Rule 12(b)(6) dismissal where dismissal was sole option because forum selection clause specified non-federal forum); *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 583 (D.N.J. 2018) (granting 12(b)(6) motion to dismiss where forum selection clause provided for state forum).

7

ambiguous as to exclusivity. (*Id.* at 8).[4] Further, even if the above clauses are mandatory, they further argue that the doctrine of *forum non conveniens* does not support dismissing their claim and that, in any event, TIEPL has waived its rights under the clauses by initiating suit in the District of New Jersey. (*Id.* at 9–14).

Because "[a] forum selection clause is enforceable only if it is mandatory," the Court must first decide the threshold question whether the forum selection clauses at issue are mandatory or permissive. *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018). After, the Court will turn to whether the doctrine of *forum non conveniens* supports dismissing Hali and EMH's claim. Following, the Court will assess waiver.

### (a) Enforceability of Forum Selection Clauses

"A mandatory forum selection 'identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship.'" *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 13-7318, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (citing *Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech.*, 440 F. Supp.2d 357, 363 n.1 (D.N.J. 2006)). Meanwhile, a permissive forum selection clause "'merely specifies the court empowered to hear litigation' and, in effect, 'allows parties to air any dispute in that court without requiring them to do so.'" *Id.* (citing *Int'l Bus. Software Solutions*, 440 F. Supp. 2d at 363 n.2).

Here, the forum selection clauses are mandatory. Hali and EMH's interpretation of the Franchise Agreement—that suit may be brought in India or elsewhere—renders the express use of the term "shall" in ¶ 11 meaningless. And the Third Circuit has held that despite the absence of

---

[4] While ambiguities are generally to be construed against the drafter, *City of Orange Twp. v. Empire Mortg. Servs., Inc.*, 775 A.2d 174, 181 (N.J. Super. App. Div. 2001), the express terms of the Novation Agreement states that that rule of construction—the *contra proferentem* rule—shall not apply (Novation Agreement ¶ 1.2.7).

words such a "exclusive" or "sole," use of the mandatory term "shall" evidences the parties' clear intent to make a forum selection clause mandatory. *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85–86 (3d Cir. 2006); *see also Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 765 (3d Cir. 1984) (treating language "venue for any proceeding . . . shall be Salt Lake County, State of Utah," as a mandatory forum selection clause); *Asphalt Paving Systems, Inc.*, 2015 WL 167378, at *5 (finding "jurisdiction of any dispute shall be in Orange County, Florida" indicates mandatory forum selection clause); *Samuels v. Medytox Solutions, Inc.*, No. 13-7212, 2014 WL 4441943, at *7 (D.N.J. Sept. 8, 2014) (finding "use of the word 'shall' renders the forum selection clause mandatory and not permissive"); *Davis Media Group, Inc. v. Best Western Intern., Inc.*, 302 F. Supp. 2d 464, 468 (D. Md. 2004) (holding that "[t]his Agreement . . . shall be subject to the jurisdiction of the Courts of the State of Arizona" evidenced mandatory forum selection because any other interpretation would "demean the express language of the Agreement").[5]

Even if the term "shall" does not clearly confer exclusive jurisdiction in India, any ambiguity in the language of the Franchise Agreement is clarified when read in conjunction with the Novation Agreement. Although Hali and EMH allege breach of the Franchise Agreement, there is no dispute that their claim also implicates the Novation Agreement. (*See* Mov. Br. at 15; D.E. No. 18, Counterclaim ¶ 6 (alleging Franchise Agreement continued pursuant to Novation Agreement)). Paragraph 3.1 of the Novation Agreement expressly states that it is to be "construed in the same manner and subject to the same jurisdiction" as the Franchise Agreement. Significantly, the Novation Agreement then specifies that the "same" jurisdiction as to any disputes arising "from or in connection therewith" is the "exclusive jurisdiction" in Mumbai

---

[5] *But see Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson, Inc.*, 201 F.3d 15, 18–19 (1st Cir. 2000); *John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors Inc.*, 22 F.3d 51 (2d Cir. 1994); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76–77 (9th Cir. 1987).

courts. To read both Agreements as providing for non-exclusive jurisdiction would render the term "exclusive" meaningless.

Thus, the Court finds that the Franchise and Novation Agreements contain forum selection clauses that are mandatory.

### (b) *Forum Non Conveniens*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 60 (2013). A plaintiff's choice of forum should rarely be disturbed—but when an alternative forum to hear the case exists, when the plaintiff's choice of forum would establish "oppressiveness and vexation to a defendant," and when the chosen forum is inappropriate when considering the forum court's administrative and legal problems, then a court may in its discretion dismiss the case. *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)). In exercising that discretion, the Third Circuit "ha[s] identified the following four factors":

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.

*Id.*

Where there is a valid forum selection clause, the first and third factors—the plaintiff's choice of forum and the private interest factors—weigh in favor of the preselected forum. *See Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (citing *Atlantic Marine Const. Co., Inc.*, 571 U.S. at 63–64). A forum selection clause is entitled to great weight,

10

is presumptively valid, and will be enforced absent a showing "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in a litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989)); *Asphalt Paving Sys., Inc.*, 2015 WL 167378, at *4. The party opposing enforcement of a forum selection clause bears a "heavy burden of proof." *Asphalt Paving Sys., Inc.*, 2015 WL 167378, at *4 (quoting *M/S Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 17, 19 (1972)).

Here, the first and third factors weigh in favor of the preselected forum. Hali and EMH do not claim that the forum selection clauses were the result of fraud or overreaching or that enforcing litigation in India would be "seriously inconvenient as to be unreasonable." Nor do they argue that enforcement would violate a strong public policy of this forum. Thus, the forum selection clauses are valid. Accordingly, the parties' dispute regarding the location of the witnesses and records (the third factor) is not relevant—because such private interest factors weigh in favor of India as the contractually bargained for forum. *See Atlantic Marine*, 571 U.S. at 64.[6] "When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Likewise, Hali and EMH's choice of forum (the first factor) does not weigh in favor of ignoring the contractually preselected forum. *See id.* Thus, only the second and fourth

---

[6] Private interest factors affect "the convenience of the litigants" rather than the forum. *Windt*, 529 F.3d at 189 (defining private interest factors to include access to sources of proof, cost of obtaining witnesses, and all other practical problems impacting ease and expense of trial).

11

factors—the availability of an adequate alternative forum and public interest factors—can overcome the preselected forum. *See Collins*, 874 F.3d at 186.

Those two factors will overcome the preselected forum only in "unusual," "exceptional," or "extraordinary" circumstances. *Atlantic Marine*, 571 U.S. at 62–64; *see also Collins*, 874 F.3d at 186. Hali and EMH do not dispute that India is available as an adequate alternative forum. Public interest factors affect the convenience of the forum, *Windt*, 529 F.3d at 189, and include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty," *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 612 (3d Cir. 1991) (internal quotation marks omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The party opposing the forum selection clause bear the burden of proof to show why enforcement of the contractually agreed-to forum is unwarranted. *Atlantic Marine*, 571 U.S. at 63–64.

TIEPL contends that there is a public interest in having an Indian court apply and interpret Indian law. (Mov. Br. at 17). In response, Hali and EMH argue that the following factors justify overcoming the forum selection clauses: (i) application of Indian law does not require dismissal because federal courts routinely interpret foreign law; (ii) India has no local interest in or nexus to this dispute because the alleged breach of contract occurred in the United States rather than in India; and (iii) resolution of their counterclaim in India would be an inefficient use of judicial resources because overlapping or identical issues would have to be decided by two different courts. (Opp. Br. at 13–14).

Examining these competing interests, the Court does not find there are unusual and extraordinary circumstances to overcome the preselected forum. That federal courts routinely apply foreign law is not a reason to overcome the preselected forum but is rather a reason that this Court is an appropriate alternative forum. Moreover, while the alleged breach of contract may have occurred *primarily* in the United States—in that the alleged breach injured a company based and operating in the United States—the breach partially occurred in India—because it allegedly involved an Indian company that allegedly failed to honor its obligation in "sending content to [EMH]." (D.E. No. 18, Counterclaim, ¶ 11). Thus, it is not the case that India has no interest in the matter. Finally, the inefficiency of litigating similar issues in both forums does not—without more—rise to the level of unusual or extraordinary circumstances.

### (c) Waiver

While the Court would ordinarily enforce the forum selection clause and dismiss EMH's claim, the Court ultimately agrees with Hali and EMH that TIEPL has waived its right to enforce the forum selection clauses. (Opp. Br. at 9–13). Indeed, "venue objections are waivable, even when premised on a forum-selection clause." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 407 (3d Cir. 2017); *cf. Atlantic Marine*, 134 S.Ct. at 581, 583. Thus, "[w]hen a party chooses to file suit upon a contract in an unauthorized venue in direct contravention to the contract's forum selection clause, it is not surprising that courts would infer the party's abandonment of its rights under the forum selection provision." *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 375 (W.D. Pa. 2012) (collecting cases); *accord N. Am. Commc'ns, Inc. v. Herman*, No. 17-0157, 2018 WL 581069, at *7 (W.D. Pa. Jan. 25, 2018). That is, of course, so long as the parties' claims are not too "attenuated" from the contract that contains the forum selection clause. *MTR Gaming Grp., Inc.*, 899 F. Supp. 2d at 376.

13

TIEPL argues that its claims are not subject to the forum selection clauses because it does not assert a claim for breach of contract and because some of Defendants are not parties to either agreement. (Reply at 7–10). However, TIEPL has sued EMH—a party to the both agreements—and it has squarely placed the validity of both agreements at issue by alleging that "[o]n May 3, 2010, any right that Eastern Media had to publish a North American version of *The Indian Express* ceased to exist." (Compl. ¶ 43). TIEPL's federal and state law claims depend on the correctness of that allegation. And Defendants hotly contest it. Thus, TIEPL's federal and state law claims are "dispute[s] or differences arising from or in connection" with both agreements. (Novation Agreement ¶ 3.1). Because the Court finds that TIEPL has waived the forum selections clauses in the Franchise and Novation Agreements, the Court denies TIEPL's motion to dismiss EMH's breach of contract claim.[7]

### B.     Intentional Interference with Contract and Prospective Economic Advantage

Hali claims that TIEPL committed the tort of intentional interference with contract and prospective economic advantage by sending an email to the editorial board of *The Indian Eye* advising the board of this lawsuit and claiming that Hali had been "avoiding" the lawsuit and its "serious legal claims." (D.E. No. 18, Counterclaim ¶ 18). Hali alleges the "sole intent and purpose" of sending that email was to "wrongfully interfere, intentionally and maliciously and without justification, in the contractual relationship between defendant Sunil Hali and *The Indian*

---

[7]     *Cf. Cohan v. Acme Lift Co. LLC*, No. 20-11075, 2021 WL 1625098, at *3 (D.N.J. April 27, 2021) (granting the defendant's motion to transfer the *entire case* to the preselected forum because even though the plaintiff's statutory NJLAD claim did not arise out of the non-disclosure agreement ("NDA"), there was "no question" that the NJLAD claim related to the NDA as "demonstrated by the inescapable defense that Plaintiff settled and expressly released the NJLAD claim"); *Publicis Comm. v. True North Comm. Inc.*, 132 F.3d 363, 366 (7th Cir. 1997) ("Perhaps one could argue that to prevent duplication the district court should dismiss the principal claim as well—for if [defendant's] claim under the pooling agreement is a compulsory counterclaim to [plaintiff's] suit, then [plaintiff's] claims are equally compulsory counterclaims to [defendant's] invocation of the [ ] agreement, which now will occur in Delaware.").

*Eye* board of directors and Mr. Hali's prospective economic advantage." (*Id.* ¶ 19). Hali contends that he has been "damaged by plaintiff's malicious and tortious interference." (*Id.* ¶ 20).

Under New Jersey law, to establish tortious interference with a prospective economic advantage, a party must show the following:

> (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of the interference; and (5) damages resulting from the defendant's interference.

*Milano v. Fed. Exp. Corp.*, No. 14-1263, 2014 WL 5358998, at *4 (D.N.J. Oct. 20, 2014) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989))); *Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. App. Div. 2014).

TIEPL argues that Hali has failed to proffer factual allegations demonstrating each of the elements of a tortious interference claim. (Mov. Br. at 18–21). The Court finds that Hali's allegations are sufficient as to some of the elements but falls short with respect to damages.

First, Hali sufficiently alleges he has an existing or reasonable expectation of economic benefit or advantage from *The Indian Eye*. He alleges that it is his publication and that he has a contractual relationship with its board of directors. (D.E. No. 18, Counterclaim ¶¶ 17 & 19). Second, TIEPL's knowledge of that expectation can be inferred from the email itself, which identifies Hali to the board of directors as "your publisher." (D.E. No. 21-3, Ex. B). Third, Hali alleges that the accusation that he was avoiding this lawsuit was false. (D.E. No. 18, Counterclaim ¶ 19). TIEPL, for its part, cites the procedural history in this case to show that the accusation was true. (Reply at 11 – 12; *see also* Mov. Br. at 20). But whether the accusation was true or false

15

raises a question of fact that the Court cannot determine at this stage of the litigation. Moreover, Hali sufficiently alleges that TIEPL's email was wrongful and constituted intentional interference.

However, Hali fails to allege the fourth and fifth elements of the claim—that he suffered damages that were caused by TIEPL's email. *See Lightning Lube*, 4 F.3d at 1168 ("New Jersey law requires that a plaintiff alleging tortious interference with existing or prospective advantage present proof that *but for* the acts of the defendant, the plaintiff 'would have received the anticipated economic benefits.'" (quoting *Printing Mart-Morristown*, 563 A.2d at 37)). While the details of damages need not be spelled out in great detail, there is no allegation concerning what anticipated economic benefit he would have received (but did not receive) but for the tortious interference. The Court is "not required to credit bald assertions." *McCargo*, 2011 WL 6725613, at *1. Accordingly, the Court dismisses Hali's tortious interference claim.

### IV. CONCLUSION

For the reasons explained above, TIEPL's motion to dismiss is **GRANTED in part** and **DENIED in part**. TIEPL's motion to dismiss the breach of contract claim is **GRANTED** as to Hali but **DENIED** as to EMH. That claim is dismissed *with prejudice* as to Hali. TIEPL's motion to dismiss Hali's tortious interference claim is **GRANTED**. That claim is dismissed *without prejudice*. Hali may file an amended complaint within thirty days of the date of this Opinion and the accompanying Order to cure the deficiencies identified herein.

Dated: January 18, 2022

*/s/Esther Salas*
Esther Salas, U.S.D.J.